UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA ANN MONTICCIOLO,

      Plaintiff,

v.                                  Case No. 11-15253

CITY OF GROSSE POINTE, et al,          HON. AVERN COHN

      Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (Doc. 32)**

**I. INTRODUCTION**

This is an employment case. Plaintiff Lisa Ann Monticciolo is suing defendants James Fox, Peter Dame, Al Gwyn, and the City of Grosse Pointe.[1] Plaintiff, a public service officer for the City of Grosse Pointe, alleges that she has been subjected to sexual harassment and a hostile work environment, retaliated against for filing an Equal Employment Opportunity ("EEO") complaint, and denied a promotion to detective.

The first amended complaint is in five counts, phrased by plaintiff as follows:

Count I:      Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

Count II:     Violation of the Elliott-Larsen Civil Rights Act, MCLA §§ 37.2102, *et*

---

[1] Plaintiff also sued the City of Grosse Pointe Department of Public Safety (the "Department"), but stipulated to its dismissal on August 30, 2012. (Doc. 23-1). On September 5, 2012, the Court entered an Order of Dismissal of the Department. (Doc. 24).

*seq.*;

Count III:       Violation of the Whistleblower Protection Act, MCLA §§ 15.361, *et seq.*;

Count IV:       Hostile Work Environment - Sexual Harassment; and

Count V:        Failure to Supervise/Negligent Supervision.

Now before the Court is defendants' motion for summary judgment (Doc. 32). For the reasons that follow, the motion will be granted in part and denied in part.

## II. BACKGROUND

### A. Plaintiff's Employment

Since March of 1996, plaintiff has been employed as a public safety officer ("PSO") with the City of Grosse Pointe Department of Public Service (the "DPS"). (Doc. 39 at 3, Joint Statement of Undisputed Material Facts ("JSUMF") ¶ 4). Plaintiff is the only female in the department.

Defendants Fox, Dame, and Gwyn are plaintiff's superiors. Fox was the Public Safety Director from 2006 until his retirement on November 16, 2011. Dame is the City Manager of Grosse Pointe. Gwyn is a detective and the DPS Sergeant in command of the Detective Bureau.

### B. Sexual Harassment/Hostile Work Environment

Plaintiff testified at her deposition that, over the course of her employment with the DPS, she was sexually harassed and subjected to a hostile work environment by her coworkers. In many instances, she could not recall a specific time frame in which certain events occurred during her employment. She specifically recalled the following events:

1.       On one occasion, plaintiff was prohibited from going on a fire call and was

2

told by her supervisor, Lieutenant Lansky, "[Y]ou're a girl, all you're good for is working in a kitchen."  (Doc. 32-2 at 62, Pl's. Dep.; Doc. 32-10 at 6, Burks Aff.).

2.      In 2004, plaintiff witnessed several male PSOs watching pornographic pay-per-view videos in the fire hall during "fire time."  Fire time is where "officers . . . lounge in the fire hall, generally speaking," while they are on duty.  When plaintiff complained about the pornographic videos, she was told by another employee, Officer Craft, that plaintiff works "in a man's world," and that she would have to get used to it.  (*Id.*).

3.      Plaintiff complained to her superiors about the PSOs watching pornographic videos at work.  As a result, the PSOs were no longer allowed to watch cable television.  In addition, 24 hour shifts, which were more popular with the PSOs, were no longer permitted.  This caused a number of the PSOs to stop talking to plaintiff because they "blamed me [plaintiff] due to the fact that I made a complaint against other officers."  (*Id.* at 73).

4.      Plaintiff observed pornography on a general office computer when she was attempting to play a computer game.  She reported the pornography to her superior, Sergeant Ralling.  The general office computer was removed the next day.  (*Id.* at 19).

5.      In 2005 or 2006, plaintiff's supervising sergeant, Mike Seidel, told plaintiff that he wanted to witness her engaging in a lesbian encounter with a Grosse Pointe resident who was the complainant in a criminal matter.  Plaintiff did not report the incident to her superiors.  (*Id.* at 63).

6.      On multiple occasions personal items were taken from plaintiff's locker in the women's locker room.  Plaintiff talked to Chief Fincham about the theft.  (*Id.*).

7.      On one occasion, someone logged into the Law Enforcement Information

Network ("LEIN") system using plaintiff's login and password while plaintiff was on duty in her patrol car.  (*Id.* at 64).

8.      On another occasion, someone urinated and defecated in the sink in plaintiff's locker room.  Plaintiff does not know who was responsible for this.  After plaintiff complained to Chief Fincham about what happened, Fincham ordered male employees to stay out of the female locker room.  (*Id.* at 55; Doc. 39 at 6, JSUMF ¶ 11–12).

9.      In January of 2011, plaintiff was denied reinstatement of compensatory time when she was ill.  She claims this was done because she is a female.  (Doc. 39 at 21, JSUMF ¶ 36).

## C. The "Detective" Promotion

In December of 2010, a job opportunity became available for a detective position in the Detective Bureau.  Plaintiff applied, as did two male PSOs, Lee and Adams.  (Doc. 39 at 8, JSUMF ¶ 17).  The detective position was a lateral transfer that did not offer a salary increase, but provided the requirement of more overtime which would lead to more pay.  (Doc. 32-2 at 56, Pl's. Dep.).

Defendants Fox and Gwyn conducted the interviews of the potential candidates for the detective position.  The three candidates were assigned scores, separately by both Fox and Gwyn, in the following categories:

1.      Scenario Based Exams (30 points possible);

2.      Years With Department (approximately 1 point for every two years);

3.      Training/Experience With Job of Detective (10 points possible);

4.      Why Should You Be Selected Over Other Candidates (10 points possible based in ability to work with others, self confidence, use of English language, personal expression, suitability for detective position);

4

5.      Flexibility At All Times Of Day And Night (10 points possible);

6.      Miranda rights question (10 points possible);

7.      Describe "Four Corners" Of A Warrant Affidavit In Obtaining A Search Warrant And Identify Parts Of Warrant (10 points possible); and

8.      Crime Scene Question (10 points possible).

The following is a breakdown of how each candidate was scored by Fox and Gwyn, respectively:

| Categories | Plaintiff | Lee | Adams |
|:---:|:---:|:---:|:---:|
| 1 | 20, 20 | 25, 25 | 28, 28 |
| 2 | 7, 7 | 2, 2 | 5, 5 |
| 3 | 9, 9 | 7, 7 | 6, 5 |
| 4 | 7, 7 | 9, 9 | 6, 7 |
| 5 | 7, 7 | 10, 10 | 7, 8 |
| 6 | 9, 9 | 7, 8 | 7, 10 |
| 7 | 5, 5 | 9, 7 | 5, 4 |
| 8 | 7, 7 | 7, 7 | 5, 5 |
| **Total** | **142** | **151** | **141** |

*See* (Doc. 32-5 at 2). Lee scored highest, with 151, followed by plaintiff at 142 and Adams at 141. Lee was promoted to detective filling the department's only available position.

Plaintiff disputes the scoring method and complains that it was subjective and arbitrary. She says she was most qualified for the position. In addition, plaintiff says the questions were invalid and not relevant to the detective position.

### D. Plaintiff's EEO Complaint And Alleged Retaliation

In February of 2011, Plaintiff filed an EEO complaint against defendants claiming

5

discrimination in the workplace.  (Doc. 39 at 21, JSUMF ¶ 37).  As a result, plaintiff says that, in May of 2011, Gwyn instructed the other PSOs that "they should refuse to work with [plaintiff] because [she would] throw them under the bus."  (Doc. 32-2 at 58, Pl's. Dep.).  PSO Dan Exkert stated in an affidavit that Fox instructed him to be carful what he says around plaintiff because "she will suck you into this."  (Doc. 32-9 at 3, Exkert Aff.).  Exkert further stated that Fox warned him that he "better hope she [plaintiff] doesn't win her lawsuit" because everyone would lose their jobs.  (*Id.*).  PSO Gregory Burks stated in an affidavit that Fox informed him that "[i]t would really help the city out if she [plaintiff] [was] . . . laughing and joking about the case."  (Doc. 32-10 at 4, Burks Aff.).  Burks took this to mean that Fox wanted him "to lie and say that [he] witnessed [plaintiff] at a meeting laughing and joking about her pending legal action."  *Id.*  In addition, Burks says Fox advised him and Exkert that they should distance themselves from plaintiff and watch what they say around her.  (*Id.*).  Fox denies having these conversations with Exhert and Burks.

Plaintiff also says that her personnel file was altered in response to her filing of an EEO complaint.  She says that favorable information was removed and unfounded complaints were added.  (Doc. 32-2 at 75, 88–89, Pl's. Dep.).  Plaintiff explains:

> I requested to see my personnel file.  Once I did see it, numerous things were missing, and then I realized that there was two unfavorable documents in there.  Actually, there was three, and when I discussed it with my union rep and Chief Fox, they still were not, one was removed, two were still there.

(*Id.* at 88).

Further, in September of 2011, Lee reported plaintiff to Gwyn for "lounging" when he observed her and Burks laying in front of the TV in the fire hall.  (Doc. 32-8 at 9, Lee Dep.; Doc. 32-2 at 90, Pl's. Dep.).  Lee stated at his deposition,

6

> We were – I was working that day.  As I recall, I was called downstairs to meet with a citizen.  I walked by, I heard the TV on in the fire hall.  I was the fire – or myself and Detective Gwyn[] were the fire officers for the day.  So on my way back upstairs, I went to turn the TV off and observed her and Officer Burk[]s laying in the two recliners we had back there while on road patrol.  And I informed Detective Gwyn[] of what I saw and that was the end of it.

(Doc. 32-8 at 9).  Plaintiff denies that she was sleeping and says that Lee falsely reported the incident in retaliation for plaintiff filing the EEO complaint.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

The revised Rule also provides the consequences of failing to properly support or address a fact:

7

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

## V. DISCUSSION

### A. Counts I and II (Violation of Title VII and Michigan's Elliott-Larsen Civil Rights Act – Failure to Promote)

In counts I and II, plaintiff alleges she was discriminated against in denial of a lateral promotion to detective because of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws §§ 37.2102, *et seq.*  Plaintiff has established a material factual issue regarding the third prong of the three-part *McDonnell Douglas Corp. v. Green*,

8

411 U.S. 792 (1973) test (*i.e.* that Grosse Pointe's reliance on the interview scores was

pretext for discrimination, *see infra*).  The reasons follow.

**1. The Law**

The Sixth Circuit recently explained,

> Title VII's anti-discrimination provision makes it "an unlawful
> employment practice for an employer . . . to discriminate
> against any individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of such
> individual's race, color, religion, sex, or national origin."  42
> U.S.C. § 2000e-2(a)(1). Intentional discrimination claims under
> Title VII can be proven by direct or circumstantial evidence.
> *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).  "Direct
> evidence is that evidence which, if believed, requires the
> conclusion that unlawful discrimination was at least a
> motivating factor in the employer's actions."  *Jacklyn v.
> Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d
> 921, 926 (6th Cir. 1999).  Circumstantial evidence, on the other
> hand, is proof that does not on its face establish discriminatory
> animus, but does allow a factfinder to draw a reasonable
> inference that discrimination occurred.  *Kline v. Tenn. Valley
> Auth.*, 128 F.3d 337, 348 (6th Cir. 1997).

*Ondricko v. MGM Grant Detroit, LLC*, 689 F.3d 642, 648–49 (6th Cir. 2012).  Cases

brought under ELCRA "are analyzed under the same evidentiary framework used in Title

VII cases."  *Id.* at 652–53 (citations and internal quotations omitted).  Thus, the Court

engages in the same inquiry for plaintiff's Title VII and ELCRA claims.

Where, as here, "a plaintiff proceeds on her claim using circumstantial evidence, she

bears the burden of establishing a *prima facie* claim of discrimination under the tripartite

*McDonnell-Douglas* framework."  *White v. Columbus Metropolitan Housing Auth.*, 429 F.3d

232, 238 (6th Cir. 2005) (citation omitted).  To prove a prima facie case of gender

discrimination, a plaintiff must prove four elements: (1) "she is a member of a protected

class"; (2) "she applied for and was qualified for a promotion"; (3) "she was considered for

and denied the promotion"; and (4) "other employees of similar qualifications who were not members of the protected class received promotions at the same time her request for promotion was denied." *Warf v. U.S. Dept. of Veterans Affairs*, ___ F.3d ___, 2013 WL 1458702, at *3 (6th Cir. 2013). If the plaintiff proves the above elements, the burden then shifts to defendant to "provide a legitimate, nondiscriminatory reason for promoting the other employee" under the well-familiar *Mcdonnell Douglas* framework. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the employer provides a nondiscriminatory reason for declining to promote the plaintiff, the burden shifts back to the plaintiff to show that the decision was pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802.

## 2. This Case

The amended complaint does not specify which defendants Counts I and II relate to. As the Court reads the amended complaint, Counts I and II relate only to defendant Grosse Pointe and the city manager, Dame. Grosse Pointe, through Dame, made the decision to promote Lee and not plaintiff.

Here, the Detective Bureau announced one open detective position and decided to internally promote a PSO. The three people considered for the position were plaintiff, Lee and Adams. Fox and Gwyn interviewed the candidates and Dame ultimately determined that, under the specific scoring method explained above, Lee was the most qualified for the promotion. Plaintiff says that the scoring method was a sham and that the only reason she did not get the position is because she is a woman.

Plaintiff has established a prima facie case of gender discrimination. *See Warf*, 2013 WL 1458702 at *3. Plaintiff is a member of a protected class, a female, and was

10

denied a promotion that instead went to Lee, a male.  Plaintiff was just as qualified, if not more qualified, for the position than Lee.  She was the only PSO with prior detective experience, the most senior of the three candidates, an instructor at the Fire Academy with prior fire training, held a Master's Degree, the only applicant to have been awarded DPS "Officer of the Year," and was the only applicant who was the past President, Vice-President, and current Treasurer of the Grosse Pointe Police and Fire Association.

Having met her minimum burden in establishing a prima facie case of gender discrimination, the burden shifts to Grosse Pointe to offer a nondiscriminatory reason for choosing to promote Lee instead of plaintiff.  Grosse Pointe has met this burden.  Grosse Pointe's reason for promoting Lee instead of plaintiff is that it used a particular interview protocol based on a point system and Lee scored higher than plaintiff and Adams.  Thus, Lee was promoted to the only available detective position.

The burden shifts back to plaintiff to show that Grosse Pointe's reason for promoting Lee instead of plaintiff was a pretext for discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  Here, genuine issues of material fact exist.

"[A] reason cannot . . . be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason."  *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).  "A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action."  *Id.* (citation omitted).  Plaintiff's claim falls into the second category.

Plaintiff challenges the interview process as inherently "invalid, unreliable, and

11

violative of Equal Employment Opportunity Commission ("EEOC") guidelines for employment tests and selection procedures."  She says the test was created as a false pretense to deny her a promotion.  Plaintiff says (1) the test has never been used before and was only created because plaintiff, a female, applied for a promotion; (2) the test was never validated and cannot be replicated; and (3) there are inherent inconsistences in the scoring method that reveal that scoring was not objective.

Plaintiff has met her burden in avoiding summary judgment.  First, Grosse Pointe coincidentally created a new interview protocol that it had never used before at the same time plaintiff applied for a lateral promotion.

Second, the interview protocol used multiple subjective components in contravention to the EEOC's Uniform Guidelines on Employee Selection Procedure ("UGESP").  *See* 28 U.S.C. § 1607.5.  The EEOC's UGESP define "a workable set of standards for employers, unions, and employment agencies in determining whether their selection procedures conform with the obligations contained in title VII."  *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 412–13 (1975) (citing 29 C.F.R. § 1607.1(c) (internal quotations and alterations omitted). The UGESP "are not administrative regulations promulgated pursuant to formal procedures established by the Congress" but they "do constitute the administrative interpretation of [Title VII] by the enforcing agency, and consequently they are entitled to great deference."  *Id.* at (1975) (internal quotations, citations and alterations omitted).

Only one portion of the scoring–years of experience–appears on its face to be objective.  However, even in this category, there is no explanation of how the candidates were scored.  Further, as plaintiff explains, the scoring was inconsistent:

> There is no question that PSO Monticciolo had the longest

12

> tenure with the Department. The scoring here improperly
> assessed points for any candidate who had worked an odd
> number of years, such as Lee. A candidate with one year
> experience would receive the same score as a candidate with
> twice as much experience: each would receive 1 point. Here,
> PSO Lee was given two points despite having worked less
> than for years, such that he was given 1 point for every 1.5
> years of employment, whereas PSO Monticciolo received 1
> point for every 2 years of employment. For purposes of
> balanced scoring, either PSO Lee should have received 1.5
> points total or PSO Monticciolo should have received 9.3 points
> (1 point for every 1.5 years of service).

(Doc. 35 at 19, Pl's Resp. Br.)

Third, a lack of contemporaneous documentation of a defendant's proffered

explanation for making a decision can sometimes support an inference of pretext. *Choices*

*in Cmty. Living, Inc. v. Petkus*, No. 12-3523, 2013 WL 1149712, at *5 (6th Cir. March 21,

2013) (citing *Hamilton v. Geithner*, 666 F.3d 1344, 1355–56 (D.C. Cir. 2012); *Cicero v.*

*Borg-Warner Auto, Inc.*, 280 F.3d 579, 589–92 (6th Cir. 2002); *Brewer v. Quaker State Oil*

*Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995)). In *Hamilton v. Geithner*, a Title VII case

where an African-American male employed as an industrial hygienist claimed discrimination

in an employment decision on the basis of race and sex, the court of appeals explained:

> First, the record contains no contemporaneous documentation
> of the Secretary's proffered explanation–that Burrell
> outperformed Hamilton in the interview. Neither selecting
> official Burns nor the other panelists appear to have created
> any written evidence of their deliberations or their reasons for
> choosing Burrell, leaving us with no record of the
> decisionmaking process beyond notes taken during the
> interviews. Burns's and Mitchell's notes contain no comments,
> positive or negative, regarding Hamilton's interview
> performance or communication skills, thus weakening their
> claim that they selected Burrell because Hamilton's interview
> "did not go well."
>
> . . . .

13

> Second, the Secretary's proffered non-discriminatory explanation relies heavily–indeed entirely–on subjective considerations, and our case law instructs us to treat such explanations with caution on summary judgment. Although "employers may of course take subjective considerations into account in their employment decisions," we have repeatedly expressed concern about the ease with which heavy reliance on subjective criteria may be used to "mask" or "camouflage" discrimination. "Subjective criteria," we have explained, "lend themselves to racially discriminatory abuse more readily than do objective criteria."

666 F.3d at 1355–56 (internal citations omitted).

Here, like *Hamilton*, Fox and Gwyn did not take any contemporaneous notes during the interview process. Thus, the Court is left with Grosse Pointe's proffered explanation–that Lee scored higher than plaintiff–without any written explanation of how the candidates performed contemporaneous to the interviews.

In sum, based on the fact that the interview protocol was used for the first time at the time plaintiff applied for a promotion, the lack of contemporaneous documentation throughout the interview process, and the subjectivity in the interview process and lack of explanation of how points were awarded, plaintiff has proffered sufficient evidence which would allow a jury to reasonably reject Grosse Pointe's explanation for promoting Lee instead of plaintiff as a pretext for gender discrimination. Accordingly, counts I (Title VII gender discrimination) and II (ELCRA gender discrimination) against Grosse Pointe and Dame survive summary judgment.

### B. Count III (Violation of the Whistleblower Protection Act, Mich. Comp. Laws §§ 15.361, *et seq.* – Retaliation for filing EEO Complaint)

Count III of plaintiff's complaint alleges that defendants, individually and collectively, retaliated against her for filing an EEO complaint in violation of Michigan's Whistleblower

Protection Act ("WPA"), Mich. Comp. Laws §§ 15.361, *et seq.* Defendants are entitled to summary judgment on the sole basis that plaintiff did not address the issue in her response brief. As explained by another court,

> The opponent of a summary judgment motion has the burden to show that a "rational trier of the fact" [could] find for the non-moving party or that there is a "genuine issue for trial." Having failed to offer even a "scintilla of evidence" on this claim, the Court GRANTS summary judgment.

*Weldon v. Great White North Distrib. Servs., L.L.C.*, 197 F. Supp. 2d 893 (E.D. Mich. 2002) (internal citation omitted) (emphasis in original). Indeed, the Sixth Circuit has explained that district courts can properly decline to consider the merits of a claim if the claim is not addressed in the response to the summary judgment motion. *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (citation omitted). Accordingly, the Court will grant summary judgment to defendants on this basis.

Even if the Court considers the merits of the WPA claim, defendants are entitled to summary judgment. The reasons follow.

## 1. The Law

The WPA provides, in pertinent part,

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee . . . reports or is about to report, verbally or in writing, a violation or a suspected violation of law or regulation . . . , unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Mich. Comp. Laws § 15.362.

The "underlying purpose of the WPA is protection of the public." *Anzaldua v.*

15

*Neogen Corp.*, 292 Mich. App. 626, 631 (2011) (citing *Dolan v. Continental Airlines/Continental Express*, 454 Mich. 373, 378 (1997)).  A prima facie case under the WPA requires a showing that: "(1) the plaintiff was engaged in protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action."  *Whitman v. City of Burton*, 293 Mich. App. 220, 228 (2011) (citing *West v. Gen. Motors Corp.*, 469 Mich. 177, 183–84 (2003)); *see also Shaw v. City of Ecorse*, 283 Mich. App. 1, 8 (2009).  As the Michigan Supreme Court has explained, "[t]he WPA is a remedial statute and must be liberally construed to favor the persons that the Legislature intended to benefit."  *Anzaldua*, 292 Mich. App. at 631 (citing *Chandler v. Dowell Schlumberger, Inc.*, 456 Mich. 395, 406 (1998)).

The WPA requires "[a] person who alleges a violation of this act [to] bring a civil action for . . . actual damages . . . within 90 days after the occurrence of the alleged violation of this act."  Mich. Comp. Laws § 15.363.  Under Michigan law, a plaintiff must set forth in her complaint alleged retaliatory actions that "took place within the 90-day period preceding the filing" of the complaint.  *Wajer v. Outdoor Adventures, Inc.*, No. 294985, 2011 WL 240697, at *1 n.1 (Mich. Ct. App. Jan. 25, 2011).

## 2. This Case

Here, plaintiff has not alleged retaliatory actions that took place within the 90-day period preceding the filing of her complaint.  Plaintiff's complaint was filed in state court on November 15, 2011.  Plaintiff claims that defendants' retaliatory actions included (1) Grosse Pointe's failure to promote her to the detective position in December of 2010; (2) Fox and Gwyn together isolating her from other employees by instructing them, in May of 2011, to

16

stay away from her; and (3) Fox and Gwyn subjecting plaintiff to pretextual disciplinary write-ups for trivial matters, the last of which occurred in September of 2011.  (Doc. 13 at 11, Pl's. First Am. Compl. ¶¶ 65–69.  To the extent that the act that occurred in September of 2011–Lee reporting plaintiff to Gwyn for "lounging"–constitutes a retaliatory action, there is no causal connection between the complaint and plaintiff's filing of the EEO complaint. Accordingly, defendants are entitled to summary judgment on the WPA claim.

First, the failure to promote plaintiff cannot be the basis of the WPA claim because it occurred in December of 2010, well beyond the 90-day period preceding the filing of plaintiff's complaint.  In fact, the EEO complaint was not filed until February of 2011, months after plaintiff was denied a promotion.  Declining to promote plaintiff could not have possibly been in response to plaintiff's filing of the EEO complaint.

Second, Fox allegedly instructed Exhurt and Burks to stay away from plaintiff in May of 2011.  This, too, did not occur within the 90-day period preceding the filing of plaintiff's complaint.  Thus, to the extent that the WPA claim is based on Fox's and Gwyn's alleged actions in isolating plaintiff from her coworkers, it is untimely.

Finally, to the extent that plaintiff's WPA claim is based on Lee reporting plaintiff to Gwyn for "lounging" in the fire hall in September of 2011, as explained above, plaintiff has not introduced any evidence to show that this was causally related to her filing of the EEO complaint.  Lee testified at his deposition that he was merely relaying what he saw to his partner Gwyn.  (Doc. 32-8 at 9).  Lee says plaintiff and Burks were laying down on the couches in the fire hall.  (*Id.*).

It appears that, to establish a causal connection, plaintiff would rely on the temporal relationship between Lee's verbal complaint to Gwyn in September of 2011 and plaintiff's

filing of the EEO complaint in February of 2011.  This, alone, is not enough to survive summary judgment.

In *West v. General Motors Corp.*, the Michigan Supreme Court explained:

> The most that plaintiff demonstrates here is that he was disciplined, and eventually discharged, after he reported to the police that Reeves had assaulted him.  To prevail, plaintiff had to show that his employer took adverse employment action *because of* plaintiff's protected activity, but plaintiff has merely shown that his employer disciplined him *after* the protected activity occurred.  Plaintiff had to demonstrate that the adverse employment action was in some manner influenced by the protected activity, but has failed to make such a demonstration. . . .

> Although the employment actions about which plaintiff complains occurred after his report to the police, such a temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action.  Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed.  Plaintiff must show something more than merely a coincidence in time between protected activity and adverse employment action.

469 Mich. 177, 185–86 (internal citations omitted) (emphasis in original).

Like *West*, all plaintiff has demonstrated is a temporal relationship between the time that plaintiff filed the EEO complaint and the time Lee complained about plaintiff to Gwyn.  Plaintiff has not proffered any evidence that establishes a causal connection between Lee's reporting of plaintiff to Gwyn and plaintiff's filing of the EEO complaint.  As such, summary judgment is appropriate.

### C. Count IV (Hostile Work Environment - Sexual Harassment)

Count IV of plaintiff's amended complaint alleges a hostile work environment based on claimed sexual harassment.  Although the amended complaint does not specify

18

whether this claim is brought under Title VII or Michigan law, plaintiff's response brief cites

to Michigan law.  Accordingly, the Court analyzes the claim under Michigan's ELCRA.

### 1. The Law

The exclusive remedy for a sexual harassment claim in Michigan is the ELCRA.

*Elezovic v. Bennett*, 274 Mich. App. 1, 6 (2007).  A prima facie hostile work environment

claim based on sexual harassment requires plaintiff to establish five elements:

> "(1) the employee belonged to a protected group;
>
> (2) the employee was subjected to communication or conduct on the basis of sex;
>
> (3) the employee was subjected to unwelcome sexual conduct or communication;
>
> (4) the unwelcome sexual conduct or commination was intended to or in fact did substantially interfere with the employee's employment and created an intimidating, hostile, or offensive work environment; and
>
> (5) respondeat superior.

*Radtke v. Everett*, 442 Mich. 368 (1993).

The Michigan Supreme Court in *Radtke* explained that,

> [a] hostile work environment claim is actionable only when, in the totality of the circumstances, the work environment is so tainted by harassment that a reasonable person would have understood that the defendant's conduct or communication had either the purpose or effect of substantially interfering with the plaintiff's employment, or subjecting the plaintiff to an intimidating, hostile, or offensive work environment.

*Id.* at 398.  "When the hostile work environment is created by the actions of coworkers and

other coemployees, the alleged victim seeking a remedy under the CRA must file a claim

of hostile work environment sexual harassment against her employer on a vicarious liability

theory."  *Elezovic*, 274 Mich. App. At 6 (citation omitted).  Even if sexual harassment has

occurred in the workplace, "[a]n employer may avoid liability for such a claim if it adequately

investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment." *Downer v. Detroit Receiving Hosp.*, 191 Mich. App. 232, 234 (1991) (citation omitted).

## 2. This Case

Here, as explained above, all of plaintiff's complaints of sexual harassment that were reported were immediately addressed and remedied by plaintiff's superiors. When plaintiff complained to her superiors that she witnessed male PSOs watching pornography, cable television was banned. When plaintiff observed pornography on a general office computer and complained to her superiors, the computer was removed from the premises. When personal items were taken from plaintiff's locker, and someone urinated and defecated in the sink in plaintiff's locker room, her superiors banned the male PSOs from entering plaintiff's locker room. Plaintiff has not introduced any evidence to contest these facts. She has not introduced any evidence that shows that her reported sexual harassment on multiple occasions was not remedied by her employer. Thus, her hostile work environment claim fails as a matter of law.

Further, plaintiff's hostile work environment claim is barred by the three-year statute of limitations. *See, e.g.*, *Moore v. Gen. Motors Corp.*, No. 257560, 2006 WL 445977, at *1 (Mich. Ct. App. Feb. 23, 2006) ("A claim based on employment discrimination in violation of the CRA must be filed within three years of when it accrued.") (citations omitted). The last sexually related statement made to plaintiff occurred in 2006 or 2007 when her supervising sergeant told her that he wanted to witness her engaging in a lesbian encounter with a Grosse Pointe resident who was the complainant in a criminal matter. Aside from the fact that plaintiff did not report this incident to her superiors, it occurred

20

outside of the three-year statute of limitations.   Accordingly, plaintiff's hostile work environment claim is also barred by the statute of limitations.[2]

## VI. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (Doc. 32) is GRANTED IN PART and DISMISSED IN PART.  Specifically,

all claims against Fox and Gwyn are DISMISSED;

Counts III (WPA), IV (sexual harassment/hostile work environment) and V (negligent supervision) are DISMISSED; and

Counts I (Title VII) and II (ELCRA) proceed against Grosse Pointe and Dame, only.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  May 16, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, May 16, 2013, by electronic and/or ordinary mail.

S/Sakne Chami
Case Manager, (313) 234-5160

---

[2] Although Count V of plaintiff's complaint (failure to supervise/negligent supervision) is phrased as an independent claim, plaintiff complains of the same sexual harassment in Count IV.  Accordingly, Count V does not state a separate claim from Count IV.